# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION, YOUNGSTOWN

| | | |
|---|---|---|
| WILLIAM LEE FISHER, HELEN GOULD, DONNA HOLZER, ROBERT HOLZER, TAYLOR HOLZER, MELINDA HUTTON, JENNIFER KIDDER, JOSEPH KIDDER, JULIE RICHEAL, KEITH RICHEAL, GEORGE A. PSOMAS,  individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, ABC CORPORATIONS 1-20 (Names Unknown)<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.<br><br>JUDGE:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

Plaintiffs William Lee Fisher, Helen Gould, Donna Holzer, Robert Holzer, Taylor Holzer, Melinda Hutton, Jennifer Kidder, Joseph Kidder, Julie Richeal, Keith Richeal, and George A. Psomas, by their undersigned attorneys, allege upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as to all other matters, as to which allegations they believe substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery, as follows:

### I.    NATURE OF THIS ACTION

1.      This is a class action brought on behalf of thousands of individuals and businesses damaged by the derailment of Norfolk Southern Freight Train 32N in East Palestine, Ohio on February 3, 2023.

2.      Of the dozens of cars that derailed, at least eleven contained hazardous materials, including vinyl chloride, a highly combustible compound classified by the EPA as a Group A human carcinogen (i.e., the deadliest).  Exposure to vinyl chloride affects the cardiovascular, respiratory, and central nervous systems, and can cause difficulty breathing, lung irritation, chest pains, coughing, dizziness, headaches, eye irritation, loss of consciousness, and even death.

3.      Although firefighters worked tirelessly for days trying to contain the resulting blaze, they were unable to extinguish the conflagration.  And as the temperature of the of cars containing the vinyl chloride rose, so did the risk of a catastrophic explosion.  Although the cars were equipped with emergency relief valves designed to prevent dangerous pressure levels by venting the car's contents to the atmosphere, the valves malfunctioned.  Due to the imminent threat of a deadly explosion, residents had to be evacuated from their homes.

4.      On February 6, 2023, three days after the derailments, Defendants performed a "controlled release" of the vinyl chloride.  That procedure entailed dumping the cancer-causing substance into a trench, setting it afire, and waiting for the vinyl chlorine to burn off into the atmosphere.  Unfortunately, when vinyl chloride burns, it releases other toxic chemicals, including hydrogen chloride and phosgene, a chemical warfare agent used in World War I now banned by the Geneva Convention.  The toxic mushroom cloud of black smoke could be seen for many, many miles.

5.      On February 8, 2023, five days after the derailment, the fire was finally extinguished. But the damage was done. More than a *million pounds* of vinyl chloride had been emitted into the environment.  That is more than *twice* the total annual vinyl chloride emissions of all industrial emitters in the United States combined.

6.     As a direct consequence of Defendants' reckless and negligent actions and/or omissions, Plaintiffs and the Class members have suffered and will continue to suffer substantial damages, including but not limited to decreased property values, damage to real and personal property, out-of-pocket expenses, lost wages, loss of business income, loss of business goodwill, and medical monitoring expenses.

7.     Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated residents and businesses in close proximity to the derailment site, seeking financial compensation for these injuries.  Plaintiffs also seek injunctive and equitable relief, including testing and cleaning protocols to abate the toxic discharges, as well as the creation of a fund to finance medical monitoring services to screen, prevent, and treat injuries caused by the toxic chemicals released as a result of the derailment and so-called "controlled release" of the toxic chemicals.

## II.     JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has jurisdiction over the parties because Defendants conduct substantial business in this District and intentionally and regularly availed themselves of the markets and jurisdiction in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because most of the events, actions, inactions, decisions, wrongful conduct, and transactions complained of herein occurred in this District.

### III.    PARTIES

### RESIDENTS AND INDIVIDUALS

11.    Plaintiff William (Bill) Lee Fisher resides at 484 E Main St., East Palestine, Ohio, within a mile of the site of the Norfolk Southern Freight Train 32N derailment.  Bill lives with his two sons, Logan W. Fisher and Lance M. Wolfe, as well as Lance's wife and two young children. On February 3, 2023, Bill's son yelled out "look out the window dad!" and directed Bill to the massive fireball outside his window.  Bill recalls the next day, while walking through his living room, he was struck with a sudden bout of dizziness, something he had never experienced before, which caused him to fall into his love-seat.  Bill and his family were forced to evacuate their home in the aftermath of the derailment of Norfolk Southern Freight Train 32N, and stayed in a hotel in Boardman.  Since the derailment, Bill has experienced intense coughing, sharp pain in his head, shortness of breath whenever doing manual labor, and unpredictable dizziness spells. Bill is a truck driver by trade and has lost work due to illness and exhaustion. Since the derailment, there continues to be an unusual odor in and around Bill's home. As a result of Defendants' conduct and omissions complained of herein, Bill has suffered substantial injuries including decreased property value, damage to real and personal property, lost wages, and out-of-pocket expenses.  Bill seeks to be a class representative for the Resident and Individual Class.

12.    Plaintiffs Joseph and Jennifer Kidder reside at 555 E. Main Street, East Palestine, Ohio and were forced to evacuate their home in the aftermath of the derailment of Norfolk Southern Freight Train 32N.  The Kidders moved to a hotel in Salem for seven nights.  They were told that they could return home on the 8th or 9th but stayed away until their water was tested.  As a result of Defendants' conduct and omissions complained of herein, Plaintiffs Joseph and Jennifer Kidder suffered substantial injuries including decreased property value, damage to

real and personal property, and out-of-pocket expenses. The Kidders seek to be class representatives for the Resident and Individual Class.

13. Plaintiffs Robert and Donna Holzer reside at 696 Neely Manor, East Palestine, Ohio and were forced to evacuate their home in the aftermath of the derailment of Norfolk Southern Freight Train 32N. The couple raises their grandson, Taylor Holzer, who lives with them. The Holzers have approximately 100 rescue animals, including parrots, foxes, coyotes, and a wolf dog. After the derailment, some of the animals have suffered swollen faces, weeping eyes, and stomach ailments. As a result of Defendants' wrongful conduct, the Holzers have suffered substantial injuries including decreased property value, damage to real and personal property, and out-of-pocket expenses Robert and Donna Holzers seek to serve as class representatives for the Resident and Individual Class.

14. Plaintiff Melinda Hutton resides in Salem, Ohio, approximately 20 miles from the location of the train derailment. After the derailment, Ms. Hutton noticed a strange odor in her home and her dog became ill and started to vomit. In addition, Ms. Hutton's eyes burned, she developed a headache, experienced difficulty and pain while breathing. Ms. Hutton has several friends in the area who had similar experiences with their pets as a result of the derailment. Ms. Hutton lives on a farm with goats and horses and fears for their health. Ms. Hutton uses well water from her property, and she is concerned that her water source is now contaminated or will be contaminated due to the derailment. As a result of Defendants' conduct and omissions complained of herein, Ms. Hutton suffered injuries including decreased property value, damage to real and personal property, and out-of-pocket expenses. Ms. Hutton seeks to serve as a class representative for the Resident and Individual Class.

15. Plaintiffs Keith and Julie Richeal live approximately five blocks from the derailment site and were forced to evacuate their home in the aftermath of the derailment of Norfolk Southern Freight Train 32N. Below is a picture taken from the Richeal's property

following the derailment. The Richeals stayed at a hotel and then later, at a friend's house. As a result of Defendants' conduct and omissions complained of herein, the Richeals have suffered injuries including lost wages, decreased property value, damage to real and personal property, and out-of-pocket expenses. The Richeals seek to serve as class representatives for the Resident and Individual Class.



16. Plaintiffs George A. Psomas and his mother, Helen M. Gould, reside at 365 Columbia St., East Palestine, Ohio, approximately 3000 feet from the derailment site. George and Helen were likewise ordered to evacuate. The night of the derailment, Helen saw the

enormous fireball from her window and both Helen and George suffered burning eyes and nausea and subsequently felt sick.  As a result of Defendants' conduct and omissions complained of herein, George and Helen have suffered injuries including decreased property value, damage to real and personal property, and out-of-pocket expenses.  George and Helen seek to be class representatives for the Resident and Individual Class.

## BUSINESSES

17.    Plaintiff Taylor Holzer runs an Ohio business in East Palestine, Ohio, which was forced to close due to the evacuation.  Taylor raises domesticated foxes, which he sells as pets.  One of the foxes died from the fumes caused by derailment of Norfolk Southern Freight Train 32N, and two others miscarried.  Another broke its leg trying to escape after the explosions.  A veterinarian treated one of the foxes for vinyl chloride exposure.  Tests showed the animals had lung inflammation and elevated liver values.  All told, Taylor has spent approximately $8,000 on treatment for the animals.  As a result of Defendants' conduct and omissions complained of herein, Taylor suffered injuries including decreased property value, out-of-pocket expenses, damage to  personal property, lost wages, loss of business income, and loss of business goodwill. Taylor seeks to serve as a class representative for the Business Class.

## DEFENDANTS

18.    Defendant  Norfolk Southern Corporation ("NSC") is a Virginia corporation with a principal place of business in Atlanta, Georgia.

19.    Defendant Norfolk Southern Railway Company ("NRSC") is a wholly owned subsidiary of NSC and a Class I railroad corporation organized under Virginia law with a principal place of business in Atlanta, Georgia. NSRC operates approximately 19,300 route miles in 22 states and the District of Columbia and serves every major container port in the

eastern United States.[1]

20.     Upon information and belief, NSRC has consistently held itself out as conducting business affairs as a conduit for NSC in connection with the ownership and operation of their railway enterprise. Additionally, NSC and NSRC constituted a joint venture in connection with their railway enterprise inasmuch as they agreed to undertake ownership and operation of the enterprise jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property or resources in exercising control or a right of control over the facilities.

21.     NSC and NRSC (collectively, "Norfolk Southern") is a major transporter of industrial products, including agriculture, forest and consumer products, chemicals, metals, and construction materials. In addition, Norfolk Southern operates the most extensive intermodal network in the East and is a principal carrier of coal, automobiles, and automotive parts.

22.     Defendants ABC Corporations 1-20, names unknown and addresses unknown, are believed to be predecessors, successors-in-interest or other separate corporate entities involved in, related to, or otherwise participating in the manufacture, transport, maintenance, control, oversight, monitoring, inspection, stabilization, or design of the Norfolk Southern freight train that derailed in East Palestine, Ohio on February 3, 2023 and/or its contents.  Plaintiffs could not discover, despite the exercise of reasonable diligence, the names of these defendants.  Upon information and belief Defendants ABC Corporations 1-20 actively participated in the transportation or storage of the vinyl chloride at issue in this litigation, and as such owed duties of care in that regard.

---

[1] http://www.nscorp.com/content/nscorp/en/about-ns/corporate-profile.html

## IV.    FACTS

23.     NSC touts itself as "one of the nation's premier transportation companies."[2] However, according to the Federal Railroad Administration ("FRA"), NSRC has had more accidents in Ohio and Pennsylvania since 2019 – 141 in total – than any other railroad company.

24.     Norfolk Southern's most recent derailment took place on the evening of Friday, February 3, 2023 at approximately 9 p.m.  Norfolk Southern Freight Train 32N was on its way to Conway, Pennsylvania from Madison County, Illinois when an alarm sounded indicating a mechanical issue with a malfunctioning railcar axle. A wheel bearing had overheated, which caused the train to catch fire.  The train nevertheless continued to travel ablaze through Salem, Ohio (approximately 20 miles west of the derailment site) toward East Palestine.

25.     Notably, this was not the first time Norfolk Southern Freight Train 32N had experienced problems on the route.  In fact, it had broken down at least once before.  Employees familiar with the matter believed the train's excessive length and weight — approximately 151 cars, 9,300 feet long, 18,000 tons —contributed to both the initial breakdown and the subsequent derailment.[3] Worse still, the train was backloaded with 40% of its weight, the heaviest tanker cars, at the rear.

26.     When an emergency brake was eventually applied, the train derailed and spilled millions of pounds of toxic and highly combustible chemicals, which ignited.  Those toxic chemicals included vinyl chloride, butyl acrylate, ethylhexyl acrylate, isobutylene, ethylene glycol monobutyl ether, diethylene glycol, hydrogen sulfide, hydrogen cyanide, and benzene.

27.     Despite the immediate dangers posed by the highly toxic chemicals spewing from the wreckage, Norfolk Southern failed to immediately report the derailment as required by

---

[2] http://www.nscorp.com/content/nscorp/en/about-ns/corporate-profile.html

[3] https://www.cbsnews.com/news/ohio-train-derailment-east-palestine-norfolk-southern-excess-size/

federal law. *See* 49 C.F.R. § 225.9(a)(2)(iv). Norfolk Southern did not report the trainwreck to federal authorities until approximately two hours after the derailment.

28.     Aerial photos taken at the time showed a gnarled entanglement of railcar wreckage engulfed by fire and heavy smoke, discharging a toxic mix of chemicals into the surrounding communities' air, water, and soil. The conflagration was large enough to be detected by a weather radar approximately 50 miles away in Pittsburgh, Pennsylvania. Its smoke plume was blown to the south and east due to a northwest wind that was blowing over the fire, traveling at least as far as Bridgewater, Pennsylvania at that time.

29.     Norfolk Southern Freight Train 32N was transporting at least five cars containing more than a million pounds of vinyl chloride, a potent carcinogen linked to liver cancer, brain cancer, breast cancer, and blood cancer. Vinyl chloride can travel through soil and groundwater or convert to a gas and travel with the wind. It is also normally colorless and odorless and when ingested through the lungs, skin, or mouth, can cause grievous injuries to the nervous system, cardiovascular system, lungs, liver, kidneys, and reproductive system.

30.     As the wreckage fires burned, the temperature of the railcars carrying the vinyl chloride climbed, as did the pressure inside the railcars and the risk of a catastrophic explosion. Although the cars were equipped with emergency relief valves designed to vent their contents to relieve pressure in such emergencies, the valves malfunctioned as a result of poor maintenance. Due to the growing risk of a deadly explosion, nearby residents were evacuated from their homes.

31.     At 4:30 p.m. on Monday, February 6, 2023, Defendants performed a "controlled release" of the vinyl chloride by intentionally blowing holes in cars and dumping their cancer-causing contents into a crude trench and then igniting the vinyl chloride to burn off into the atmosphere. However, burning vinyl chloride merely releases a host of other toxic chemicals,

including the chemical warfare agent, phosgene gas.  Phosphate gas is colorless gas used as a chemical weapon in World War I that is colorless but six times deadlier than chlorine gas.

32.     Following the explosive and fiery "controlled release," a large plume of thick black smoke formed a mushroom cloud, which dispersed toxic gases into the atmosphere:





33.     The "controlled release" of vinyl chloride released hundreds of thousands of pounds of toxic gases, including phosgene and hydrogen chloride, into the air. Particulate pollution from the fire was reported as far as 30 miles around the derailment site.  For instance, on February 6, the EPA detected five times the particulate level in Youngstown, Ohio -- 23 miles from the derailment site – than detected prior to the derailment.

34.     In the days since the derailment, fears about a broader environmental disaster in East Palestine and neighboring areas have been mounting. According to the Ohio Department of Natural Resources, at least 3,500 fish have died from local waterways including the Ohio River becoming contaminated. And local residents have experienced chickens, rabbits, foxes and other animals falling ill and dying.  Meanwhile, a pungent odor remains in the air in East Palestine, and some residents have complained of rashes, runny eyes, and other symptoms.

35.     The spread of toxic pollutants from the trainwreck damaged Plaintiffs' properties and interfered with their ability to use and enjoy their properties. Plaintiffs and Class members

continue to live in the shadow of the toxic wreckage. Hazardous chemicals continue to seep through soils, contaminating groundwater and surrounding properties. These properties have suffered and continue to suffer a diminution in value by virtue of their proximity to site of the derailment, and the stigma associated with being located so near the environmental disaster.

36.     The derailment, subsequent chemical spill, and fire were caused by the negligence, carelessness, recklessness, and/or intentional acts of Defendants in the ownership, operation, inspection, maintenance, and repair of the subject train, rail cars, and track system, as well as the design and performance of the "controlled release."

37.     As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs were caused to suffer damages, including, but not limited to decreased property values, out-of-pocket expenses, damage to real and personal property, lost wages, loss of business income, and loss of business goodwill.

38.     As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs will require clinical evaluations, epidemiological analyses, and a Court supervised medical monitoring program to determine the impact of the hazardous chemicals on their health.

39.     As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs were forced to leave the peace and enjoyment of their homes, their outdoor property, their streets, their yards, parks, and/or their businesses following the release of harmful and obnoxious quantities of hazardous and ultra-hazardous chemicals and from the threat of explosion resulting from high concentrations of the highly flammable chemicals.

40.     As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs were caused to suffer economic repercussions from the closure of businesses, the loss of business opportunity, business interruption, loss of income and wages, and the inability to transact business and the loss of good will.

## V.        CLASS ACTION ALLEGATIONS

41.        Plaintiffs bring all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Rule 23 (a), (b)(2) and (b)(3) are met with respect to the classes defined below.

### A.        Class Definitions

42.        Plaintiffs seek to certify the following classes:

(a)        **Business Class** – Businesses located within the geographic region extending up to 30 miles from the location of the February 3, 2023 Norfolk Southern Freight Train derailment in East Palestine, Ohio. The Class Representative for this Class is Taylor Holzer.[4]

(b)        **Resident and Individual Class** –  Residents and other non-resident individuals that either resided or worked within the geographic region extending up to 30 miles from the location of the February 3, 2023 Norfolk Southern Freight Train derailment in East Palestine, Ohio.  The Class Representatives for this Class are William Fisher, Helen Gould, Donna Holzer, Robert Holzer, Melinda Hutton, Jennifer Kidder, Joseph Kidder, Julie Richeal, Keith Richeal, and George A. Psomas.[5]

Excluded from the Classes are: (1) Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded from the Classes; government entities; and the judges assigned to this case, their immediate families, and court staff; and (2) insurers and insurance syndicates whose claims for damages regarding the February 3, 2023 train derailment and resulting toxic chemical explosion arise out of a right of subrogation, whether equitable, contractual, or otherwise.

---

[4] Plaintiffs reserve the right to amend this class definition, if necessary.

[5] Plaintiffs reserve the right to amend this class definition, if necessary.

**B.      Numerosity**

43.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1) because Class members are so numerous that the joinder of all members is impractical. Although the exact number of Class members is unknown to Plaintiffs at this time, it is ascertainable and includes thousands of residents and businesses.

**C.      Commonality**

44.      There are questions of law or fact common to each of the classes, including at least the following:

   a.      Whether Defendants negligently operated, maintained, controlled, oversaw, inspected, or monitored Norfolk Southern Freight Train 32N and its contents;

   b.      Whether Defendants' acts or omissions as set forth above caused the derailment, fire, subsequent leak of toxic chemicals, resulting explosion, contamination and evacuation;

   d.      Whether Defendants acted with conscious disregard for the safety and health of Plaintiffs and the Class members;

   e.      Whether Defendants' actions created a nuisance;

   e.      Whether Defendants' actions constitute negligence per se;

   f.      Whether Defendants are strictly liable;

   g.      Whether Defendants' actions constitute trespass;

   h.      Whether Defendants are liable for the defective and unreasonably dangerous conditions on Norfolk Southern Freight Train 32N, resulting in the Plaintiffs' and Class members' exposure to the hazardous chemicals;

   j.      Whether Defendants' misconduct, violations of federal, state, and local laws, and breaches of legal duties owed to businesses and residents of the

community in the transporting, containing and storage of hazardous substances resulted in the Plaintiffs' and Class members' exposure to the hazardous chemicals.

**D.      Typicality**

45.     Plaintiffs have the same interests in this matter as all other members of the Classes, and their claims are typical of all members of the Classes.

**E.      Adequacy**

46.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in class actions.  Plaintiffs will fairly and adequately represent the interests of the Class members and do not have interests adverse to the Classes.

**F.      Common Questions Predominate, and the Class Action Device Is Superior Under Rule 23(B)(3)**

47.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation.  This action will be prosecuted in a fashion to ensure the Court's able management of this case.  Further, there is little or no interest by members of the Classes in individually controlling the prosecution of separate actions.

**G.      Rule 23(b)(2) Certification is also Appropriate**

48.     A class pursuant to Rule 23(b)(2) is also appropriate because Defendants have acted or refused to act on grounds generally applicable to all members of the Classes, thereby making appropriate preliminary and/or injunctive relief, and/or corresponding relief, in respect of the Classes as a whole, including but not limited to a Court supervised medical monitoring program.

## COUNT I - NEGLIGENCE

49.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

50.     Defendants actively participated in the transportation, maintenance, stabilization, control, oversight, inspection, and monitoring of Norfolk Southern Freight Train 32N, and as such owed duties of care in that regard.  Defendants owed a heightened duty to Plaintiffs and the Classes as a common carrier and as a transporter of hazardous chemicals to exercise due care in transporting, maintaining, stabilizing, controlling, overseeing, inspecting, and/or monitoring the Norfolk Southern Freight Train 32N, its contents, and the rails upon which the train operated. Additionally, Defendants owed a duty to maintain, monitor, oversee, inspect, and/ or control how Norfolk Southern Freight Train 32N was operated to avoid the release of harmful quantities of toxic chemical substances and materials.  Defendants also owed a duty to prevent the inappropriate emission of toxic chemicals into the environment, especially into residential settings.

51.     Defendants breached these duties, and others, by negligently transporting, maintaining, stabilizing, controlling, overseeing, inspecting, and/ or monitoring Norfolk Southern Freight Train 32N, its contents, and the rail line upon which the train operated. Further, Defendants breached this duty by performing the "controlled release" of extremely combustible and hazardous chemicals.  Among other things, Defendants failed to operate, maintain, inspect, and/or repair the railway and railcars to ensure their safety and proper operation; failed to ensure proper mechanism for stopping malfunctioning railcars without derailment; failed to ensure proper safety procedures in the event of a mechanical malfunction of equipment; failed to load the railcars consistent with accepted practice; failed to adequately staff the railcars; failed to adequately train and supervise their agents and employees (including the train engineer and dispatcher operating the train at the time of the derailment); failed to adequately warn those in danger of exposure to hazardous materials; failed to institute proper

procedures in the event of a derailment to avoid exposing the environment to hazardous materials; failed to timely implement an emergency-response plan in the event of a derailment; failed to properly dispose of hazardous materials from the derailment site; and failed to contain the spread of hazardous chemicals into the air, water, and soil.

52.      As a direct and proximate result of Defendants' negligent conduct, as alleged herein, Plaintiffs and the Class members have suffered damages in an amount which will be proven at trial,  including, but not limited to, property damage, diminution of value and lost use of real estate, damage to personal and real property, lost wages, loss of business income, and loss of business goodwill.   Plaintiffs and the Class members are further entitled to appropriate equitable relief.

### COUNT II – NUISANCE

53.      Plaintiffs allege all previous paragraphs as if set forth fully herein.

54.      Plaintiffs and the Class members have legitimate and exclusive possessory rights in affected property near and surrounding the area in which Norfolk Southern Freight Train 32N derailed.

55.      Defendants' unreasonable, intentional, reckless, abnormally dangerous, and/or negligent conduct resulted in reasonably foreseeable consequences including the physical discomfort and mental annoyance and distress to Plaintiffs and the Class members and substantial interference with their ability to enjoy and use their lands, property, and neighborhoods, their ability to  enjoy and use their exclusive possession of their lands, property, and neighborhoods and, for some, their ability to carry on their businesses.

56.      Plaintiffs and the Class members suffered and continue to suffer a harm and injury to their residential, commercial, and agricultural properties to which they did not consent and which is different from the type of harm suffered by the general public.

57.     Defendants' contamination of Plaintiffs' property with toxic substances has unreasonably and substantially interfered with Plaintiffs' rights to use and enjoy their property. It has caused Plaintiffs to refrain from using or occupying their property.

58.     Plaintiffs and the Class members, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious conduct including the contamination of their land and water.

59.     Defendants' improper transportation and handling of toxic chemicals, and the contamination of Plaintiffs' property resulting therefrom, constitute a private nuisance.

60.     As a result of Defendants' misconduct, Plaintiffs and the Class members have suffered and will continue to suffer decreased property values, damage to their real and personal property, lost wages, loss of business income, and loss of business goodwill.

## CLAIM III - PUBLIC NUISANCE

61.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

62.     Defendants' release of toxic chemicals has created conditions that are harmful to health and interfere with the comfortable enjoyment of life and property. As a result of Defendants' actions and inactions, Plaintiffs have suffered a permanent loss of use and enjoyment of their property.

63.     Defendants knew or should have known that the toxic chemicals were hazardous to people and real property and that improper transportation, handling, and disposal of such materials would injure people in the surrounding communities.

64.     Plaintiffs and the Class members have a common right to enjoy their real property free from dangerous contamination, to breathe clean air, have access to clean running water without dangerous levels of toxic chemicals, and to live their lives without unreasonable exposure to toxic chemicals.

65.     Defendants, through the negligent, reckless, or intentional acts and omissions described above, substantially and unreasonably infringed upon and transgressed these public rights.

66.     As a direct and proximate result of Defendants' improper transportation and handling of toxic chemicals, Plaintiffs' and the general public's common right to breathe clean air and have access to clean water without dangerous levels of toxic chemicals was diminished.

67.     As a direct and proximate result of Defendants' release of toxic chemicals, Defendants invaded and contaminated Plaintiffs' and the Class members' residences and businesses, thus exposing them to toxic chemicals and carcinogens.

68.     Defendants' release of harmful chemicals also affected and continue to affect the public at large, causing massive environmental damage to the surrounding area.

69.     As a result of Defendants' misconduct, Plaintiffs and the Classes have suffered and continue to suffer harm, injury, and losses, including physical injury to property, loss of use and enjoyment of their property, diminution in property values, lost wages, loss of business income, and loss of business goodwill.

## COUNT IV – STAUTUTORY NUISANCE

70.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

71.     Section 112 of the federal Clean Air Act includes vinyl chloride in the list of hazardous air pollutants and sets a national emission standard. 41 Fed. Reg. 46560.

72.     Under the Pennsylvania Air Pollution Control Act, 35 P.S. § 4006.6, it is forbidden to emit air pollutants of hazardous materials in amounts greater than those set by the Clean Air Act. Any violation of the PAPCA constitutes a public nuisance and "[a]ny person who causes the public nuisance shall be liable for the cost of abatement." 35 P.S. § 4013.

73.     Under Ohio Rev. Code § 3704.03, "no person shall cause, permit, or allow emission of an air contaminant in violation of any rule adopted by the director of environmental protection."

74.     Defendants' derailment and "controlled release" emitted dangerous amounts of vinyl chloride and other hazardous chemicals into the air in and surrounding the properties of Plaintiffs and the Class members.

75.     As a direct and proximate result of Defendants' acts and omissions described herein, Plaintiffs and the Class members have had their bodies and property exposed to hazardous air pollutants in violation of Pennsylvania, Ohio, and federal law.

76.     Plaintiffs' and the Class members' exposure to the toxic chemicals caused Plaintiffs and the Class members to suffer and continue to suffer harm, injury, and losses, including physical injury to property, loss of use and enjoyment of their property, diminution in property values, lost wages, loss of business income, and loss of business goodwill.

## COUNT V - TRESPASS

77.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

78.     Defendants, without authority or privilege, caused harmful quantities of the hazardous chemicals from Norfolk Southern Freight Train 32N to physically invade and/or unlawfully enter upon the land, soil, air, and water of Plaintiffs and the Class members.

79.     Defendants knew or should have known that the hazardous chemicals they transported, released, and intentionally ignited were dangerous and harmful to people, animals, and real and personal property. Defendants were substantially certain that the emission, discharge, disposal, distribution, spread, or release of these toxic substances would injure Plaintiffs and their property.

80.     Defendants intentionally, knowingly, negligently, carelessly, and/or recklessly caused a trespass: i) by releasing into the air, water, and soils pollutants, particulates, and chemicals including vinyl chloride, butyl acrylate, ethylhexyl acrylate, isobutylene, ethylene glycol monobutyl ether, diethylene glycol, carbon monoxide, hydrogen sulfide, hydrogen cyanide, and benzene; and ii) by allowing or causing such chemicals to discharge, seep, or migrate underground in such a manner that it was reasonably foreseeable that the toxic material would, in due course, invade Plaintiffs' and Class members' real property and cause physical injury to that property.

81.     Harmful quantities of the hazardous chemicals entered Plaintiffs' land, soil, water, and breathing air.

82.     Defendants' toxic chemicals invaded the real property of Plaintiffs and the Class members and interfered with their possessory interests of that property. Defendants caused toxic chemicals to enter, invade, and intrude on the real properties of Plaintiffs and the Class members without their privilege, permission, consent, authorization, invitation, or justification This trespass has resulted in damages to the Plaintiffs and interfered with Plaintiffs' use and enjoyment of their property, caused physical damage to their property by casting over their property a plume of offensive emissions and pollutants, and depositing chemical residue on their homes, yards, businesses, and farms.

83.     As a direct and proximate result of Defendants' trespass, Plaintiffs and Class members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, the cost to repair the damage and restore the property to its pre-trespass condition, the costs of recovering possession of the property, business losses, and the value of their lost use of the property as a result of the trespass.

## COUNT VI – TRESPASS TO CHATTELS

84.    Plaintiffs allege all previous paragraphs as if set forth fully herein.

85.    Plaintiffs and the Class members had a possessory interest in their personal property including, but not limited to, personal vehicles, commercial vehicles, household goods, professional equipment, recreational equipment, livestock, and pets.

86.    Defendants' release of toxic chemicals impaired the condition, quality, and/or value of Plaintiffs' and the Class members' personal property.

87.    Through the acts and omissions described herein, Defendants deprived Plaintiffs and the Class members of the use of their personal property and caused harm to personal property in which Plaintiffs and the Class members had a legally protected interest.

88.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and the Class members suffered and will continue to suffer damage to their personal property, out-of-pocket expenses, and loss of property value.

## COUNT VII - NEGLIGENCE PER SE

89.    Plaintiffs allege all of the previous paragraphs as if set forth fully herein.

90.    In violation of Ohio Revised Code § 3704 *et seq*. and § 3734 *et seq*., Defendants allowed hazardous chemical fumes and hazardous and ultra-hazardous degradation products to escape from the Norfolk Southern Freight Train 32N and enter the open air and caused a hazardous waste to be illegally disposed from the Norfolk Southern Freight Train 32N, where it endangered the health, safety, and welfare of the public, including Plaintiffs and the Classes.

91.    Defendants' violation of Ohio Revised Code § 3704 *et seq*. and § 3734 *et seq*., constitutes negligence per se.

92.    As a direct and proximate result of Defendants' negligence per se, Plaintiffs and the Classes suffered damages in an amount which will be proven at trial and are entitled to appropriate damages and equitable relief.

## COUNT VIII - STRICT LIABILITY

93.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

94.     Defendants were engaged in an abnormally and inherently dangerous or ultra hazardous activity in the distribution, transportation, storage, maintenance, inspection, monitoring, and use of hazardous chemicals.

95.     Defendants are strictly liable for all damages which may occur or arise out of their distribution, transportation, storage, maintenance, inspection, monitoring, use, and handling of hazardous chemicals regardless of their standard of care.

96.     Plaintiffs and the Class members were in fact injured as a proximate result of their exposure to harmful quantities of hazardous chemicals distributed, transported, stored, maintained, inspected, monitored, used, and handled by Defendants and are entitled to appropriate damages and equitable relief.

97.     The harm to Plaintiffs and the Class members was and is the kind of harm that would be reasonably anticipated based on the normal risks created by transporting hazardous and toxic chemicals in close proximity to residential, commercial, and agricultural areas.

98.     As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiffs and the Class members have suffered and will continue to suffer decreased property values, damage to their real and personal property, lost wages, loss of business income, and loss of business goodwill.

## COUNT IX – OHIO REVISED CODE § 4963.37

99.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

100.    Defendants operated a railroad, or a part of a railroad, during all relevant times as alleged in this Complaint.

101.     As a direct and proximate result of Defendants' operation of a railroad, or a part of a railroad, a fire originated upon the lands belonging to Defendants and that fire was caused by the operation of the railroad.

102.     This fire caused losses and damages to Plaintiffs and the Classes and constituted a violation of Ohio Revised Code § 4963.37.

103.     Plaintiffs and the Classes are entitled to appropriate damages and equitable relief as a result of Defendants' violation of Ohio Revised Code § 4963.37.

**COUNT X - INDUCING PANIC THROUGH DISORDERLY CONDUCT**

104.     Plaintiffs allege all previous paragraphs as if set forth fully herein.

105.     Ohio Rev. Code § 2917.31(A)(3) provides that "[n]o person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following: . . . [c]ommitting any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."

106.     Ohio Rev. Code § 2917.11(A)(4) prohibits "[h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender."

107.     Ohio Rev. Code § 2917.11(A)(5) prohibits "[c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."

108.     Through the acts and omissions described above, Defendants induced panic through disorderly conduct.

109.     Defendants had no lawful or reasonable purpose in derailing the train.

110.     Defendants had no lawful or reasonable purpose in releasing and igniting thousands of pounds of toxic chemicals into the environment.

111.    Under Ohio Rev. Code § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

112.    As a direct and proximate result of Defendants' unlawful actions in derailing the Norfolk Southern Freight Train 32N and causing the "controlled release," Plaintiffs and the Class members suffered and continue to suffer harm, injury, and losses, including physical injury to property, loss of use and enjoyment of their property, and diminution in property values, lost wages, loss of business income, and loss of business goodwill.

## COUNT XI - PUNITIVE DAMAGES

113.    Plaintiffs allege all previous paragraphs as if set forth fully herein.

114.    Defendants' actions constitute heedless disregard and reckless indifference to the safety of the general public as to constitute willful misconduct, gross negligence, and/or a conscious disregard for the safety and health of others, for which punitive damages should be awarded.  As such, Plaintiffs and the Classes are entitled to punitive damages.

## COUNT XII – DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF

115.    Plaintiffs allege all previous paragraphs as if set forth fully herein.

116.    An actual, justiciable controversy exists between Plaintiffs and the Class members and Defendants. A judgment from this Court regarding these issues would afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations of the parties.

117.    Defendants have had and continue to have a duty to use reasonable care not to enter, invade, or intrude on Plaintiffs' or Class members' real property. Defendants also have owed and continue to owe a duty to Plaintiffs and members of the Class to exercise reasonable care in transporting hazardous chemicals and toxic pollutants.

118.    Defendants breached these duties by negligently, wantonly, carelessly, and/or recklessly failing to maintain and operate Norfolk Southern Freight Train 32N and failing to promptly contain and clean up the hazardous spill. These breaches caused physical injuries to Plaintiffs' and Class members' properties.

119.    Plaintiffs and Class members have an adverse legal interest to Defendants. This adverse interest and the controversy that exists between the parties can be resolved through the specific relief sought.

120.    Plaintiffs, on behalf of themselves and the Class members, request that the Court issue an Order requiring Defendants to establish and implement comprehensive testing and cleanup protocols for residential, commercial, and agricultural properties within a thirty-mile radius of the derailment site. Plaintiffs request that testing and cleanup protocols be sufficient to detect and remediate elevated levels of vinyl chloride, butyl acrylate, ethylhexyl acrylate, isobutylene, ethylene glycol monobutyl ether, diethylene glycol, carbon monoxide, hydrogen sulfide, hydrogen cyanide, and benzene on Plaintiffs' and Class members' properties, and in the soils and waters surrounding Plaintiffs' and Class members' properties.

121.    Plaintiffs, on behalf of themselves and the Class members, also request that the Court issue an order requiring and appointing a special master to implement and oversee a corporate monitoring program of Defendants' operations to insure and protect against future accidents.

**COUNT XIII – MEDICAL MONITORING**

122.    Plaintiffs allege all previous paragraphs as if set forth fully herein.

123.     As previously described, Plaintiffs and the Class members have been exposed to substantial quantities of toxic chemicals as a result of the derailment of Norfolk Southern Freight Train 32N.

124.     As a direct and proximate result of this exposure to toxic chemicals, Plaintiffs and Class members have a significantly increased risk of developing cancer and other latent diseases, making periodic diagnostic medical testing reasonably necessary.

125.     Early diagnosis of cancer and other diseases provide significant value for Class members because it will help monitor and minimize the harm caused by Defendants' misconduct and provide Class members the ability to monitor diseases caused by Defendants' misconduct.

126.     Monitoring procedures exist that make early detection of cancers and other latent disease possible and beneficial. These monitoring procedures are different from the tests and procedures that are normally recommended in the absence of toxic exposures and are reasonably necessary due to the Class members' exposures to the toxic substances released by the train.

127.     Medical monitoring to facilitate early detection of these diseases is necessary to protect the health and well-being of Plaintiffs and Class members. Periodic physical examinations and diagnostic testing will reduce the risk of severe illness and allow early medical intervention to address detected problems early in the disease process, improving the chances for survival and the long-term well-being of those affected.

128.     The exposure to toxic chemicals, in particular vinyl chloride, requires the establishment of a comprehensive medical-monitoring program to ensure that the harms occasioned by Defendants' misconduct are mitigated to the extent possible.

129.     Plaintiffs assert no claims for physical manifestation of bodily injury arising from the derailment and its aftermath and have no adequate remedy at law. Declaratory, injunctive, or other equitable relief is thus appropriate.

130.     Plaintiffs request injunctive relief in the form of a Court-supervised medical-monitoring program funded by Defendants. The specifics of the medical-monitoring program is a subject for the Court to determine, following a hearing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief in this action:

1.     An order confirming that this action is properly maintainable as a class action as defined above and appointing Plaintiffs and their undersigned counsel to represent the Classes;

2.     Injunctive relief requiring:

(a) Defendants to provide, at their expense, a Court supervised investigation to determine any potential medical problems to which persons exposed to the hazardous chemicals released from Norfolk Southern Freight Train 32N may suffer and the proper procedures for diminishing the potential for any such problems;

(b) Defendants to perform, at their expense, Court supervised studies, analyses, medical tests, medical monitoring, and remedial measures as are necessary, just and proper under the circumstances; and

(c) Defendants to perform, at their expense, a Court supervised medical monitoring program to fund a study of the long term effects of exposure to the hazardous chemicals released from Norfolk Southern Freight Train 32N, to fund a study of the long term effects of those hazardous chemicals within the human body, to gather and forward to treating physicians information relating to the diagnosis and treatment of injuries which may result from exposure to the hazardous chemicals to aid in the early diagnosis and treatment of resulting injuries, and to provide funding for diagnosis and preventable medical treatment.

(d) Defendants to pay for and abide by the recommendations of a special master to implement and oversee a corporate monitoring program of Defendants' operations to insure and protect against future accidents.

3.      An award of compensatory damages (including exposure damages) for Plaintiffs and members of the Classes and all monetary relief authorized by law or referenced in the complaint;

4.      An order that Defendants are jointly and severally liable and that Defendants must pay all appropriate damages in compensation to Plaintiffs and Class members.

5.      An award of prejudgment and post judgment interest;

6.      An award of punitive damages;

7.      An award of attorneys' fees and costs; and

8.      Such other and further compensatory, equitable or other relief as this Court may deem just, equitable or proper.

Dated: February 23, 2023                Respectfully submitted,


/s/ Jeffrey S. Goldenberg

JOHNSON & JOHNSON LAW OFFICE
Nils P. Johnson, Jr.(0001404)
Nils Peter Johnson (0091655)
12 West Main Street
Canfield, Ohio 44406
Telephone: (330) 533-1921
NilsPeter@JandJOhio.com

GOLDENBERG SCHNEIDER, LPA
Jeffrey S. Goldenberg (0063771)
Todd Naylor (0068388)
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (to be admitted *pro hac vice*)
Sean R. Matt (to be admitted *pro hac vice*)
1301 Second Avenue, Suite 2000

Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

HAGENS BERMAN SOBOL SHAPIRO LLP
Whitney K. Siehl (to be admitted *pro hac vice*)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
whitneys@hbsslaw.com

THE LYON FIRM, LLC
Joseph M. Lyon (0076050)
2754 Erie Avenue
Cincinnati, Ohio 45208
Telephone: (513) 381-2333
Facsimile: (513) 721-1178
jlyon@thelyonfirm.com

*Counsel for Plaintiffs and Class*

## ENDORSEMENT FOR JURY DEMAND

Plaintiffs demand trial by jury for all issues triable by law.


_/s/ Jeffrey S. Goldenberg_____
Jeffrey S. Goldenberg